<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JASON FETTER<br><br>        *Plaintiff*,<br><br>v.<br><br>MAERSK LINE, LIMITED and 3MC MOBILE & MECHANICAL REPAIR LLC<br><br>        *Defendants*. | Civil No.: 2:14-cv-02108 (KSH) (CLW)<br><br><u>OPINION</u> |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

       Before the Court is a motion for summary judgment filed by Maersk Line, Limited ("Maersk") seeking dismissal of plaintiff Jason Fetter's negligence claims on grounds it is immunized from liability pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*. For the reasons set forth below, Maersk's motion is denied.

**I.**     **Factual Background**

       At all times relevant to this motion, Maersk staffed crewmembers in the engine department aboard the cargo ship MAERSK MONTANA. *See* Affidavit of Mark Anderson, dated September 22, 2015 (D.E. 61-7) ("Anderson Aff."), at ¶ 4. Maersk also maintained a collective bargaining agreement with the Marine Engineers' Beneficial Association union hall ("MEBA") to provide additional "day engineers" for maintenance and repair tasks on the ship while in port. *Id.* If Maersk had a number of maintenance jobs going on at once, it would hire an outside vendor to supervise the day engineers' work. *Id.* at ¶ 7.

1

Jason Fetter was a member of MEBA.  *See* Deposition of Jason Fetter, dated July 23, 2015 (D.E. 66–5) ("Fetter Dep."), at 16:18–22.  On October 9, 2012, five day engineers—including Fetter—reported to the MAERSK MONTANA to perform various maintenance projects in the ship's main engine room while the ship was called to port at Newark, NJ.  *See* Anderson Aff., at ¶ 5.

Because there were various maintenance projects going on that day, Maersk hired 3MC to directly supervise the day engineers' work.  *Id.* at ¶ 7.  When they boarded the ship, two of the day engineers were tasked by 3MC supervisor Greg Higgs with performing maintenance work on an air system, while the remaining three—including Fetter—were tasked by Higgs to remove a stuck injector in the ship's main engine.  *Id.* at ¶¶ 6, 7; *see also* Investigation Report of Chief Mate Christopher Zimmerman, dated October 12, 2012 (D.E. 66-4) ("Zimmerman Report").

While Fetter and the other day engineers assigned to the task were attempting to fix the engine, Fetter was injured.  *See infra.*  On June 11, 2013, he filed the instant action in Texas state court and the suit was subsequently removed to the Southern District of Texas and transferred to this Court.  The amended complaint alleges that Fetter was injured as a result of negligence on the part of Maersk and 3MC (D.E. 28), and both Maersk and 3MC filed crossclaims against each other for indemnity and contribution (D.E. 33, 34).  Prior to the completion of expert discovery, Maersk moved for summary judgment on the issue of whether it is immune from liability under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*.  The motion was fully briefed (D.E. 61, 66, 64).

The Court makes its decision on the papers.

**II.   Discussion**

    **A.  Statutory Framework**

The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*. ("LHWCA") "establishes a comprehensive federal workers' compensation program that provides longshoremen and their families with medical, disability, and survivor benefits for work-related injuries and death." *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994). "As with most other workers' compensation schemes, this entitlement displaces the employee's common-law right to bring an action in tort against his or her employer . . . [and] limits employer liability to the provision of scheduled no-fault compensation payments." *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 62 (2d Cir. 2002); *see also* 33 U.S.C. §§ 904, 905(a). Employees eligible for LHWCA benefits include "any person engaged in maritime employment, including . . . a ship repairman." 33 U.S.C. § 902(4). However, the LHWCA expressly excludes from coverage "a master or member of a crew of any vessel." 33 U.S.C. § 903(3)(G).

While the LHWCA bars maritime workers from suing their employers for injuries incurred on-the-job, the Jones Act authorizes "seamen" to maintain such actions. *See O'Hara*, 294 F.3d at 62. "The LHWCA and the Jones Act complement one another." *Id*. Specifically, the "master[s] or member[s] of a crew" who are expressly excluded from the LHWCA's no-fault compensation regime are the "seamen" who are entitled to sue their employers for damages under the Jones Act. *See Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 553. Thus, "[t]he Jones Act allows seamen to recover for negligence against their employers; the LHWCA authorizes maritime workers *other than* seamen to recover for negligence, but only against parties *other than* their employers." *O'Hara*, 294 F.3d at 62 (citing *Chandris, Inc. v. Lastis*, 515 U.S. 347, 355–56 (1995)) (emphasis in original).

In the instant motion, Maersk's seeks summary judgment that Fetter was its employee at the time of his injury, but was not a Jones Act "seaman." Thus, Maersk maintains that the LHWCA provides Fetter's exclusive remedy and that his negligence action must be dismissed.

### B. Standard of Review

Summary judgment is warranted where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The nonmoving party may create "a genuine issue of material fact if [he] provides sufficient evidence to allow a reasonable jury to find for" him. *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 329 (3d Cir. 1995) (citing *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986)). The Court must "view the evidence in the light most favorable to [the nonmoving party] and draw all justifiable, reasonable inferences in [his] favor." *Sgro v. Bloomberg L.P.*, 331 F. Appx. 932, 937 (3d Cir. 2009) (citation omitted).

### C. Was Maersk Fetter's Employer At The Time Of His Injury?

To receive immunity under the LHWCA, Maersk must have been Fetter's employer at the time of his injury. *See Darr v. Chevron U.S.A., Jr.*, No. CIV.A. 96-2818, 1997 WL 470153, at *4 (E.D. La. Aug. 12, 1997), *aff'd sub nom. Darr v. Chevron, U.S.A., Inc.*, 141 F.3d 1163 (5th Cir. 1998) ("Under the LHWCA, an employer is immune from tort liability only if the plaintiff is the employer's employee"). In maritime actions, the Third Circuit has stated that "[t]he existence of an employer-employee relationship is a question of fact[,]" with the "critical inquiry turn[ing] on the degree of control exercised over the crewman." *Matute v. Lloyd Bermuda Lines, Ltd.*, 931 F.2d 231, 236 (3d Cir. 1991). Factors indicating control include payment, direction, supervision, and the power to hire and fire. *Id.*

The following facts are essentially undisputed. When a Maersk cargo ship was called to port, Maersk and 3MC had an arrangement whereby the former would identify maintenance items in need of repair, MEBA would supply day engineers, and 3MC would supervise the MEBA laborers while they conducted repairs on the ship.

Fetter, a day engineer and member of the MEBA union hall, successfully bid on a job on the MAERSK MONTANA while the ship was called to port at Newark, NJ. Onboard and directly supervising Fetter's work was Greg Higgs, who was employed by 3MC. Shortly after boarding, Fetter was tasked by Higgs with removing a stuck injector in the main engine. While he was removing the injector at Higgs's direction, the chain/eyebolt apparatus that Fetter was using to dislodge the injector snapped, striking him near his left eye and causing serious facial lacerations that required emergent medical care. *See* Zimmerman Report; Personal Injury Report of Captain Richard Hoey, dated October 12, 2012 (D.E. 61-5).

Against this scenario, Maersk has brought the instant motion seeking to dismiss Fetter's claims against Maersk and 3MC with prejudice, *see* Text of Proposed Order (D.E. 61-10), on the ground that Maersk is immune to suit pursuant to § 905(b) of the LHWCA, which provides an exclusive no-fault compensation scheme for "employees" with potential negligence claims against their "employers." *See* Maersk Moving Br., at p. 8. Maersk's moving papers identify Greg Higgs, the supervising vendor, as its delegee, and characterize Higgs as a supervisory engineer—effectively working as Maersk's agent—akin to any other crewmember in the engine department. Maersk Moving Br., at p. 11.

In opposition, Fetter argues that "[m]ultiple issues of fact exist as to whether Maersk was [Fetter's] employer under the LHWCA." Fetter Opp. Br., at p. 3. Specifically, he argues that his own testimony (D.E. 66-5, 66-6, 66-7, 66-8), along with that of MAERSK MONTANA

5

superintendent Mark Anderson (D.E. 63-2), and the investigative report compiled by Chief Mate Christopher Zimmerman (D.E. 62-4), "all show that 3MC was controlling, directing, and supervising the work." Fetter Opp. Br., at p. 11.  Accordingly, Fetter maintains that "[w]hen this evidence is viewed in a light most favorable to [him], there are obvious issues of fact as to whether Maersk controlled or supervised the work[,]" and, by extension, as to whether Maersk was his employer at the time of his injury. *Id*.

Maersk's motion—which seeks a ruling that Fetter is its employee but not a Jones Act seaman—must be evaluated in the context of the record.  Specifically, the facts Maersk relies on, including how Fetter came to get the job, and which entity was paying him, must be evaluated alongside other evidence showing that when Fetter arrived at the ship, he reported to 3MC employee Higgs, who directed him to remove the stuck injector, and whose job it was to supervise him in the completion of the task that ultimately resulted in his injury.  In short, the record is by no means definitive on the issue of Maersk's employer-employee relationship with Fetter, as it would need to be for a summary judgment ruling in Maersk's favor.  This is particularly so given the Third Circuit's direction that the existence of an employer-employee relationship involves a question of fact. *See Matute*, 931 F.2d at 236.  Maersk is not entitled to judgment as a matter of law on this record, and its motion is **denied**.[1]

An accompanying Order will be filed.

s/ Katharine S. Hayden_____<br>Katharine S. Hayden, U.S.D.J.

Dated: December 29, 2016

---

[1] Because genuine issues of fact exist as to whether Maersk was Fetter's employer at the time of his injury, it would be premature for the Court to analyze Fetter's status as a "seaman" under the Jones Act. *See Mahramas v. Am. Exp. Isbrandtsen Lines, Inc.*, 475 F.2d 165, 170 (2d Cir. 1973) ("There has never been any question that the Jones Act applies only between employees and their employers").